### A04A1576. HENRY COUNTY WATER & SEWERAGE AUTHORITY v. ADELSON.
(603 SE2d 714)

JOHNSON, Presiding Judge.

This is a condemnation action filed by the Henry County Water & Sewerage Authority to acquire 12.52 acres of land for Henry County's Tussahaw Reservoir. Following a jury trial on the issue of value, the jury awarded Latrelle Brewster Adelson $532,350. The Water Authority appeals, contending the trial court made several errors regarding evidentiary matters which prejudiced the jury and allowed the jury to consider improper items of damages. The Water Authority further contends that the trial court did not properly charge the jury on the applicable principles of law because it failed to include any charge regarding sentimental feelings or the property owner's unwillingness to part with her property. We find no error and affirm the judgment entered on the jury's verdict.

1. The Water Authority contends the trial court erred in allowing testimony regarding damages which, if suffered at all, would be the result of the entire project and not the direct result of the taking. Specifically, the Water Authority argues that testimony regarding potential flooding of Adelson's property outside the condemned area and siltation upstream from the reservoir should not have been admitted into evidence. According to the Water Authority these damages were not only speculative, but would be the result of the filling of the reservoir and not the taking. We find that under the facts of this case, evidence of possible flooding and siltation to the remainder of the property was legally relevant to the issue of just and adequate compensation.

As our Supreme Court has noted, in a condemnation proceeding involving a partial taking, two elements of damage are to be considered: (1) the market value of the property actually taken, and (2) the consequential damage that will "naturally and proximately arise to the remainder of the owner's property from the taking of the part which is taken and the devoting of it to the purposes for which it is

condemned."[1] Such consequential damage to the remainder, if sought, must be pursued during the proceedings to establish the value of the condemned land because a judgment of condemnation precludes a subsequent action for consequential damage unless such damage results from negligent or improper construction.[2] A condemnation proceeding is conclusive as to all damages, whether foreseen or unforeseen, resulting from proper construction on condemned property.[3]

The proper measure of consequential damages to the remainder is the diminution, if any, in the market value of the remainder in its circumstance just prior to the time of the taking compared with its market value in its new circumstance just after the time of the taking.[4] And, the trial court has wide discretion to admit testimony of questionable relevance.[5] In fact, "[i]t has long been the policy of the Georgia appellate courts to be liberal in allowing matters to be considered by the jury which might affect their collective minds in determining the just and adequate compensation to be paid the condemnee."[6]

Here, the evidence admitted addressed flooding and siltation that would naturally and proximately arise from the taking. Adelson's expert testified that operation of the reservoir on Adelson's property will cause flooding outside the condemned area, even assuming the Water Authority properly constructed and maintained the reservoir. Such testimony is admissible to prove compensable consequential damages to the remainder of Adelson's property. In addition, this testimony did not contradict the trial court's pretrial order excluding evidence of flooding and siltation that might occur in the future if the Water Authority was negligent in its construction or maintenance. The trial court did not abuse its discretion in allowing evidence of flooding and siltation that would naturally and proximately occur as a result of the taking and proper construction of the reservoir.

2. The Water Authority contends the trial court erred in allowing evidence regarding the sale of a portion of the subject property to a condemning authority. Specifically, the Water Authority argues that

---

[1] (Citation, punctuation and emphasis omitted.) *Dept. of Transp. v. White*, 270 Ga. 281, 282 (508 SE2d 407) (1998).

[2] Id.; *Wright v. MARTA*, 248 Ga. 372, 375 (283 SE2d 466) (1981).

[3] *BIK Assoc. v. Troup County*, 236 Ga. App. 734, 736-737 (3) (a) (513 SE2d 283) (1999).

[4] *Wright*, supra at 376.

[5] See *Pendarvis Constr. Corp. v. Cobb County &c. Auth.*, 239 Ga. App. 14, 17 (3) (520 SE2d 530) (1999).

[6] (Punctuation and footnote omitted.) *Dept. of Transp. v. Southeast Timberlands*, 263 Ga. App. 805, 808 (2) (a) (589 SE2d 575) (2003).

Adelson should not have been allowed to cross-examine the Water Authority's expert regarding the existence of a sale between the Water Authority and Henry County for a portion of the condemned property. It is true that sales of land to condemning authorities are not admissible as evidence in condemnation proceedings on the issue of the value of the land sought to be condemned.[7] The record, however, shows that the jury never heard any terms of the transaction between the Water Authority and Henry County, and specifically did not hear any "value evidence." Adelson was only permitted to question the Water Authority's expert about whether he was aware of the sale and whether he would have used the sale when he estimated the value of Adelson's property. The expert testified that even if it existed at the time he made his appraisal, he would not have used the sale. The trial court did not abuse its discretion in permitting this narrow line of questioning since it did not address the value of the land sought to be condemned or any other details of the terms of the transaction.

3. The Water Authority contends the trial court erred in allowing testimony regarding the alleged bad faith of the Water Authority. While evidence of alleged bad faith of a condemning authority is inadmissible in a condemnation jury trial where the only issue is value,[8] the record does not support the Water Authority's assertion. A review of the trial transcript shows that Adelson was cross-examining the Water Authority's expert regarding his appraisal process when the Water Authority objected and brought up the issue of bad faith in front of the jury. The trial judge immediately instructed the jury, "We're here to try the value of the property taken and any damages to the remainder, if there are any at all. Those are the sole two issues." The trial judge then directly addressed the Water Authority's objection: "[Adelson] is cross-examining this witness as to whether or not there are any requirements that it affects his independence as an appraiser in this case and that's all he's doing." Thus, to the extent that any suggestion of bad faith was made to the jury, the trial court's curative instruction demonstrates that the trial court properly exercised its discretion to limit the jury's consideration of facts relating only to value. We find no error.

4. The Water Authority contends the trial court erred in refusing to strike expert testimony regarding consequential damages. According to the Water Authority, the appraisal expert's opinions were based on inadmissible evidence and were, therefore, speculative. We find no error.

---

[7] See *Jordan v. Dept. of Transp.*, 178 Ga. App. 133 (1) (342 SE2d 482) (1986).

[8] See *Ware v. Henry County Water &c. Auth.*, 258 Ga. App. 778, 783-784 (5) (575 SE2d 654) (2002).

"The question of whether a witness has established [a] sufficient opportunity for forming a correct opinion or has stated a proper basis for expressing an opinion is for the trial court."[9] Here, prior to offering his opinion of value, Adelson's appraisal expert testified that damage to her property was caused by the loss of water frontage and certain zoning restrictions because of the reservoir. Because the trial court had excluded evidence of zoning restrictions as a basis for consequential damages in a pretrial order, the Water Authority objected to the expert's testimony. The trial court considered the objection outside the presence of the jury and concluded, "I'm going to strike that portion of his testimony referring to any damages caused by the [zoning restrictions] that affect[ ] her property as a result of this taking. Now the rest of his testimony was fine." Before announcing his ruling, the trial judge specifically asked the appraisal expert, "So if that's going to change your opinion of value now would be the time to start pulling out the pencil. Do you know whether it will or won't?" The appraisal expert replied, "I would like to say that it won't."

When the jury returned, to make sure there was no confusion about whether consequential damages could be caused by the zoning restrictions, the trial court specifically instructed the jury that any damages to the property caused by the zoning restrictions were not an issue in the case. The appraisal expert then testified that his opinion of just and adequate compensation in the case totaled $702,000, including $477,000 for consequential damages. With regard to this value, the following colloquy occurred:

> Q: Dr. Aycock, where we were is that you have — the Court instructed the jury that there could not be any consequential damages as a result of the [zoning restrictions] and you were here and heard that. And the Court also instructed you that you could not use that as a basis for consequential damages in this case; is that right?
> A: That is correct.
> Q: And what you have basically told the ladies and gentlemen of the jury is that your $477,000.00 of consequential damages have absolutely nothing to do with the [zoning restrictions]; is that right?
> A: That's correct.
> Q: And, in fact, it has to do with the loss of the creek and some potential flooding and sedimentation in or around the old mill site; is that right?

---

[9] (Punctuation and footnote omitted.) *Dept. of Transp. v. Southeast Timberlands*, supra at 810 (3).

A: That's correct.

The Water Authority challenged the appraisal's value: "And in fact before I moved to strike the damages as a result of the [zoning restrictions] those were going to be your only damages, all $477,000.00 of them; isn't that right?" The appraisal expert replied, "That's not correct. I have testified the entire time that it's due to loss of creek frontage, marketability, and other issues." The trial court did not abuse its discretion in permitting the appraisal expert to render his opinion regarding the value of consequential damages.

5. The Water Authority contends the trial court erred in allowing Adelson to cross-examine the Water Authority's expert appraiser about a prior rejected appraisal. We find no error.

The record shows that at trial the Water Authority's appraisal expert reduced his opinion of just and adequate compensation by $5,000 from the Special Master hearing.[10] The inconsistency gave Adelson the right to pursue the change in sworn testimony.[11] Contrary to the Water Authority's argument, this case does not involve a rejected opinion of an expert witness, but, rather, an inconsistent opinion. Unlike the case cited by the Water Authority,[12] the opinions in this case were rendered by the same expert, and Adelson was permitted to cross-examine the expert as to the differences in his opinions. A party is entitled to a thorough and sifting cross-examination of a witness, and the scope of that cross-examination is within the sound discretion of the trial court.[13] We find no abuse of the trial court's discretion in permitting the cross-examination.

6. The Water Authority argues that the trial court erred in failing to charge the jury that sentimental value must be ignored. However, because the trial court properly excluded evidence of sentimental value in a pretrial order, no charge regarding sentimental value was required.

The transcript pages cited by the Water Authority address Adelson's testimony where she explains how long the property had been in her family, relates certain historic details about the property and testifies about repairs to the home. The Water Authority did not object to any of Adelson's testimony as violating the trial court's

---

[10] The expert testified that he reduced his award because he had previously improperly included $5,000 for loss of mountain laurels located on Adelson's property. See *Dawson v. Dept. of Transp.*, 203 Ga. App. 157 (1) (416 SE2d 163) (1992).

[11] See *State Hwy. Dept. v. Raines*, 129 Ga. App. 123, 126-128 (3) (199 SE2d 96) (1973) (the return of an appraiser in a condemnation case which is contradictory of his testimony on the trial may be introduced for the purposes of impeaching him though it is generally inadmissible).

[12] *Banks v. Ga. Power Co.*, 220 Ga. App. 84, 86 (5) (469 SE2d 218) (1996), superseded on other grounds, 267 Ga. 602 (481 SE2d 200) (1997).

[13] See *Elliott v. Henry County Water &c. Auth.*, 238 Ga. App. 15 (1) (517 SE2d 545) (1999).

pretrial order excluding evidence of sentimental value, and we do not find that the testimony addresses sentimental value. There is no testimony that Adelson was unwilling to part with her property or that sentimental value impacted her opinion of just and adequate compensation. In fact, Adelson denied that her value estimate included any emotional attachment to the property and testified that although she had hoped to reside on the property indefinitely, her only son located to a very remote part of the country and she would live weeks at a time near him. Because the record is devoid of any evidence regarding sentimental value, the trial court did not err in failing to give a charge that sentimental value must be ignored.

*Judgment affirmed. Smith, C. J., and Phipps, J., concur.*

DECIDED AUGUST 20, 2004.

*Smith, Welch & Brittain, William A. White,* for appellant.

*Chamberlain, Hrdlicka, White, Williams & Martin, Richard N. Hubert,* for appellee.