# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 12-0409** (Berkeley County 09-F-103)

**Sara Woods,**
**Defendant Below, Petitioner**

**FILED**

May 17, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Following a jury trial, Petitioner Sara Woods was convicted of the felony offenses of kidnapping and grand larceny. Petitioner, by counsel, B. Craig Manford, appeals the order of the Circuit Court of Berkeley County sentencing her to a determinate term of thirty years in the penitentiary for the kidnapping conviction and a term of one to ten years for the grand larceny conviction, with the sentences to run concurrently. The State, by counsel, Cheryl K. Saville, filed a response. Petitioner did not file a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December 2008, Blanche Cooke parked her vehicle in the parking lot of a Martinsburg restaurant and went inside to pick up a take-out order, leaving her keys on the front seat. Her sixteen-year-old daughter, Jasmine, was asleep in the back seat. Petitioner, who was walking through the parking lot, jumped into the vehicle and sped off. Jasmine awoke immediately from the sudden movement of the car and began crying and yelling at petitioner to let her out. Petitioner kept driving.

Someone reported to Blanche inside the restaurant that her car was stolen and she called 911. In addition, Jasmine grabbed her mother's cell phone which was still inside the car and called 911.

Petitioner drove recklessly and at a high rate of speed for about ten minutes and covered about two miles before pulling into the parking lot of a convenience store. At that point, Jasmine jumped out and struck the petitioner several times. Petitioner left on foot and entered a bar which was across the road. When the police arrived, they spoke with Jasmine, then entered the bar and arrested petitioner. She was subsequently indicted for kidnapping and grand larceny.

1

Upon her arrest, the petitioner gave a video statement to the police that was played for the jury. In this statement, petitioner claimed that she took the car because a drug dealer named "Hit Man" instructed her to do so and she was afraid of him. Petitioner also claimed in her statement that Jasmine never asked her to stop and was not afraid of her. However, she also stated that she pulled into the convenience store parking lot so Jasmine would "shut the f*** up."

At trial, the petitioner introduced evidence through the testimony of her mother, her treating physician, and a licensed forensic psychologist that petitioner suffered from a seizure disorder and would occasionally "zone out." The forensic psychologist described how this condition can cause erratic and unusual behavior and loss of awareness. The psychologist opined that at the time of the incident, petitioner was suffering from a "dissociative episode or was a dissociative episode as a result of her underlying seizure disorder." He opined that from the time of the incident through the time she gave the statement to the police, petitioner engaged in purposeful behavior that was not under her conscious control for which she later had no memory and was due to her underlying seizure disorder.

In rebuttal, the State called licensed forensic psychologist, Dr. David Clayman. He disputed the testimony of petitioner's witnesses and testified that petitioner's behavior could not be explained by a seizure. In his opinion, the petitioner's conduct seemed purposeful and that someone with seizure disorder is not able to give a statement afterwards as to what happened. He testified that, instead, individuals acting under a seizure have no recollection of what they did.

During deliberations, the jury asked three questions of the court with regard to the grand larceny which are relevant to this appeal: (1) Please define permanently deprive and temporarily deprive, (2) What is the nature of returning the vehicle and what actions are required, and (3) Does the accused have to physically return the car or can the accused assume the vehicle will be returned? At trial, petitioner and respondent agreed that (1) and (2) should not be answered. Petitioner argued that question (3) should be answered. The circuit court decided that it could not answer (3) without answering the other two and did not answer any of them.

The jury found petitioner guilty of kidnapping and grand larceny. On January 5, 2012, after denying petitioner's motions for acquittal and new trial, the circuit court sentenced petitioner to a determinate term of thirty years for the kidnapping and one to ten years for the grand larceny, to run concurrently.

Petitioner raises five assignments of error. First, she argues that the circuit court erred by denying her motion for new trial and motion for judgment of acquittal on the basis that the charge of kidnapping was incidental to the grand larceny. In Syllabus Point 2 of *State v. Miller,* 175 W.Va. 616, 336 S.E.2d 910 (1985), this Court held:

> In interpreting and applying a generally worded kidnapping statute, such as W.Va. Code § 61-2-14a, in a situation where another offense was committed, some reasonable limitations on the broad scope of kidnapping must be developed. The general rule is that a kidnapping has not been committed when it is incidental to another crime. In deciding whether the acts that technically constitute kidnapping

2

were incidental to another crime, courts examine the length of time the victim was held or moved, the distance the victim was forced to move, the location and environment of the place the victim was detained, and the exposure of the victim to an increased risk of harm.

The evidence introduced at petitioner's trial does not support her argument that the kidnapping was incidental to the grand larceny. Even if petitioner did not know Jasmine was in the car when she took it, petitioner could have easily stopped and let her out immediately after realizing she was there. In *State v. Kitchen,* 207 W.Va. 724, 536 S.E.2d 488 (2000), this Court upheld a kidnapping conviction where a defendant took a driver's keys, forced the driver to the passenger seat and drove only about one mile before the passenger managed to jump out of the moving car. In the present case, petitioner's reckless driving prevented Jasmine from exiting the car on her own, and nothing prohibited petitioner from stopping the car while still in the parking lot from where she took it to let Jasmine out. Instead, she drove Jasmine approximately two miles from her mother.

Second, petitioner argues that her sentence is unconstitutionally disproportionate to her crimes. In Syllabus Point 5 of *State v. Cooper,* 172 W.Va. 266, 304 S.E.2d 851 (1983), this Court held:

> Punishment may be constitutionally impermissible, although not cruel and unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty this is not proportionate to the character and degree of the offense.

Petitioner traumatized a young girl by speeding away from her mother and not stopping to let her out. Petitioner stole a vehicle, and to effectuate that crime and not be immediately caught, kidnapped a child who was in the car. Sentencing orders are reviewed under an abuse of discretion standard. *State v. Lucas*, 201 W.Va. 271, 469 S.E.2d 221 (1997). Given the seriousness of petitioner's crimes, coupled with the fact that the sentences imposed by the circuit court are within the statutory limits and were ordered to run concurrently, we find no abuse of discretion or constitutional violation in petitioner's sentence.

Third, petitioner argues that the circuit court erred by including in its grand larceny instruction the statement that "permanent loss of the property is not an element of grand larceny." Petitioner argues that even though the instruction was a correct statement of the law, the court's inclusion of a statement as to what grand larceny is not, i.e., the owner's permanent loss of the property, misled the jury into believing that abandonment of the property could not be considered in determining petitioner's intent in taking the property.

In Syllabus Point 4 of *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995), this Court held:

3

A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, *reviewed as a whole*, sufficiently instructed the jury so they understood the issue involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

(Emphasis added). "To support a conviction for larceny at common law, it must be shown that the defendant took and carried away the personal property of another against his will and with the intent to permanently deprive him of the ownership thereof." Syl. Pt. 2, *State v. Petrice,* 183 W.Va. 695, 398 S.E.2d 521 (1990).

Petitioner cites only a fraction of the instruction as error. The court's instruction, which included the elements from *Petrice* and the lesser included offense of unlawful taking of a vehicle, was correct when reviewed in its entirety. The ultimate question for the jury to decide in a grand larceny case is the defendant's intent at the time she took the property. Although petitioner's abandonment of the property may be taken into account by the jury in determining her intent, whether the victim eventually gets the property back is not dispositive. Taken as a whole, we find no error in the circuit court's grand larceny instruction.

Fourth, petitioner asserts that the circuit court erred by failing to answer the jury's question, "Does the accused have to physically return the car or can the accused assume the vehicle will be returned?" Contrary to petitioner's argument, we find that of the three questions posed by the jury, this question is the closest to asking the circuit court to assist the jury in making a finding of fact rather than a pure question of law. We have held that the trial court has discretion in determining how best to respond to a jury question, and that review of any such response is for an abuse of discretion. *State v. Davis,* 220 W.Va. 590, 648 S.E.2d 354 (2007). We find no abuse of discretion in the circuit court's referring the jury to its correct and legally supported grand larceny instruction.

Petitioner's final assignment of error is that the verdict was contrary to the evidence at trial. Specifically, petitioner argues that the State failed to prove she intended to permanently deprive the owner of the vehicle because it was only driven two miles and then abandoned where it could be easily found. Concerning the kidnapping, she contends that the State failed to rebut her psychological evidence that she was incapable of forming the intent to kidnap Jasmine.

In *Guthrie,* this Court relied on *Jackson v. Virginia*, 443 U.S. 307, (1979), and held as follows with regard to challenging the sufficiency of the evidence in a criminal case:

In summary, a criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the

prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. As we have cautioned before, appellate review is not a device for this Court to replace a jury's finding with our own conclusion. On review, we will not weigh evidence or determine credibility. Credibility determinations are for a jury and not an appellate court. On appeal, we will not disturb a verdict in a criminal case unless we find that reasonable minds could not have reached the same conclusion. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent with our decision announced today, they are expressly overruled.

194 W.Va. at 669-704, 61 S.E.2d at 175-76 (footnote omitted).

The State's evidence at trial was sufficient to prove that petitioner did not know who owned the car she took from the parking lot. She then sped through the streets of Martinsburg until she abandoned the car only because Jasmine was making such a ruckus in the back seat. The evidence was sufficient to demonstrate that at the time she took the car, petitioner intended to permanently deprive the owner of it, even though she may have ultimately abandoned it in a convenience store parking lot.

Finally, petitioner's psychological evidence that she could not have formed the intent to kidnap was sufficiently rebutted by the State's cross-examination, the testimony of Dr. Clayman, and petitioner's own video statement. Dr. Clayman testified that petitioner's behavior was not explainable by a seizure or seizure disorder, that petitioner in fact had a personality disorder and poly-substance dependence that caused her to have a long history of dysfunction through poor judgment and decision making, and that her behaviors were long-term, complex, purposeful sequential behaviors. Accordingly, there was more than enough basis for the jury to find that petitioner formed the intent to kidnap Jasmine.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 17, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II